STATE OF NEW JERSEY IN THE INTEREST OF
M. L., JUVENILE-APPELLANT.

Argued February 4, 1974—Decided March 19, 1974.

*Mr. James J. Lee,* Assistant Deputy Public Defender, argued the cause for juvenile-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Craig D. Katz,* Assistant Prosecutor, argued the cause for State of New Jersey (*Mr. Barry G. Evertz,* Assistant Prosecutor, of counsel and on the brief; *Mr. Joseph C. Woodcock, Jr.,* Bergen County Prosecutor, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. This appeal involves the question whether the juvenile and domestic relations court was authorized under the then provision of the "juvenile and domestic relations court law, *N. J. S. A.* 2A:4–37(a), to require a juvenile, adjudicated to be delinquent, to pay a fine as a condition of probation.[1]

---

[1]This law, insofar as it relates to juveniles, has been superseded by *L.* 1973, *c.* 306, *N. J. S. A.* 2A:4–42 to 67. (Effective March 1, 1974). The old law, *N. J. S. A.* 2A:4–37(a) authorized the juvenile and domestic relations court to "place the child on probation * * * upon such terms as the court may deem to be to the best interest of the child * * *." The new law authorizes the court to "[p]lace the juvenile on probation * * * upon such written conditions as the court deems will aid rehabilitation of the juvenile."

The juvenile herein was found to have been involved in the disruption of a class in a public high school, contrary to *N. J. S. A.* 2A:149A-2. He was adjudicated a delinquent and was put on probation for one year and fined $15. The Appellate Division affirmed, 124 *N. J. Super.* 459 (1973). This Court granted certification, 64 *N. J.* 309 (1973), limited to the issue of the power of the juvenile court to impose a fine on the juvenile.

█ The question is one of statutory interpretation. The juvenile and domestic relations court is a creature of statute and has only the powers and jurisdiction conferred on it by the Legislature. *Gregg v. Juvenile and Domestic Relations Court,* 133 *N. J. L.* 89 (E. & A. 1945). It has no inherent power or authority.

Some review of the development of juvenile court legislation would be helpful in resolving the question. Originally, juveniles in this State were held to adult responsibility for their anti-social actions and were subject to fine and imprisonment as provided by law, in the same manner as an adult. Commencing in 1850, legislative steps were taken to provide for the separate confinement of children. In 1867 the State Reform School for Juvenile Delinquents at Jamesburg was opened, followed shortly thereafter by the State Industrial School for Girls at Trenton. See, *State v. Monahan,* 15 *N. J.* 34, 38–39 (1954).

Finally legislative recognition was given to the proposition that some children should not be held to adult responsibility for their anti-social actions. By *L.* 1903, *c.* 219, a court for the trial of juvenile offenders, presided over by the judge of the court of common pleas, was established in every county of the State. Juveniles charged with a crime, disorderly conduct, habitual vagrancy or incorrigibility, were brought before that court which, upon an adjudication of delinquency, could (1) commit the juvenile to a facility established for the care, custody, instruction and reform of juvenile offenders, (2) suspend sentence, (3) suspend sentence and place

the juvenile on probation upon such conditions as the court determined, or (4) render such judgment of imprisonment or fine, or both, as was provided by law for the offense upon which the conviction of juvenile delinquency was based. In essence, this statute gave the judge of the court for the trial of juvenile offenders the discretion either to hold the juvenile offender to adult responsibility, or to utilize the new statutory alternatives for juvenile treatment and rehabilitation including probation.

In 1912 the Legislature passed an act providing for the creation of juvenile courts in counties of the first class and defining the jurisdiction and powers thereof. *L.* 1912, *c.* 353. These courts were empowered, upon a finding of delinquency, to commit the child to a juvenile facility for care, custody, instruction and reform, or order the child to be placed on probation upon such conditions as the court determined. It is to be noted that the 1912 Act omitted the provision contained in the 1903 Act giving the court discretion to fine or imprison the juvenile.

The incongruity of the foregoing was apparent. In 19 counties of the State, the court for the trial of juvenile offenders could hold the child to adult responsibility, or else apply the alternative procedures for treatment of a juvenile, including probation. In the counties of Essex and Hudson juvenile court disposition was limited to the care, custody, instruction and reform of the child, or probation on terms. The *Report of Juvenile and Probation Study Commission* (1928), p. 13, noted that although prohibited by law in counties of the first class, small fines were at times assessed in juvenile cases in other counties. This *Report* discussed at length the disparate handling of juvenile matters in the several counties because of the separate statutes, and recommended that the juvenile procedures then existing in Hudson and Essex Counties be extended to all counties by enactment of a juvenile and domestic relations court law.

An act embodying the Commission's recommendations was adopted, *L.* 1929, *c.* 157, and the present juvenile and do-

mestic relations court came into existence. Its jurisdiction in juvenile matters was substantially the same as had been previously vested in the juvenile courts in Essex and Hudson Counties under the 1912 statute. The court was also given jurisdiction over certain domestic relations matters which are not here involved. The Act, as revised and supplemented, is *N. J. S. A.* 2A:4-1 *et seq.*

Disposition as to a juvenile offender was provided for in Section 15 of the Act later to become *N. J. S. A.* 2A:4-37. Under this section the court could either (a) place the child on probation "upon such terms as the court may deem to be to the best interest of the child," or (b) commit the child.[2]

 The Appellate Division in sustaining the power of the trial court to impose a fine on a juvenile referred to *N. J. S. A.* 2A:4-36, a section of the juvenile and domestic relations court act, which provides:

> Whenever a person shall be adjudged to be guilty as charged in the complaint, the court *may impose the penalty provided by law*, or may suspend sentence and place such person on probation to the chief probation officer of the county in which the person resides, upon such terms as the court shall fix. (Emphasis added.)

The reference is improper. This section, enacted in 1929 when the court was given jurisdiction in domestic relations matters, deals only with adult offenders who come before the court and are "adjudged to be guilty as charged in the complaint." It does not apply to juvenile offenders. Disposition as to them had to be under *N. J. S. A.* 2A:4-37 and was limited to either commitment to a juvenile facility or proba-

---

[2]The child could be committed (1) to a public institution established for the care, custody, instruction and reform of juvenile offenders, (2) to any other like institution commitment to which was authorized by law, or (3) to the care, custody and control of the State Board of Child Welfare.

tion.[3] It is to be noted that the 1973 revision of the statutory law affecting juveniles supersedes and specifically repeals *N. J. S. A.* 2A:4–37, but does not change Section 36 in any way.

Nor do the general statutory provisions as to probation and parole confer power to fine a juvenile as a condition of probation. The statute, *N. J. S. A.* 2A:168–1, in dealing with the power of courts having jurisdiction over criminal or quasi-criminal matters to suspend sentence and place offenders on probation, also refers to the power of the juvenile and domestic relations court to place on probation a person (adult) adjudged guilty of any offense. It then adds that "[s]uch courts shall also have the power to place on probation under the same conditions children who shall come within the jurisdiction of the court." The next statutory section, *N. J. S. A.* 2A:168–2, specifies the conditions of probation that may be included by the court. Among those listed is "shall pay a fine or the costs of prosecution."

The State argues that the provision in *N. J. S. A.* 2A:4–37(a) authorizing the court to place the juvenile on probation, when read *in pari materia* with the foregoing sections of the probation law, established a legal basis for imposing a fine on a juvenile.

We do not agree. The provision in the general probation and parole law authorizing a court to require *payment* of a fine as a condition of probation does not confer upon a court the power to *impose* a fine. It only authorizes the court to require payment of a fine as a condition of probation where a fine is otherwise provided for by law. This is clear from our decision in *State v. Mulvaney*, 61 *N. J.* 202

---

[3]In lieu of disposition under *N. J. S. A.* 2A:4–37, *N. J. S. A.* 2A:4–15 provided that the court may refer a 16 or 17 year old to the county prosecutor either because the juvenile demanded a presentment and jury trial, or the juvenile was a habitual offender, or the crime was of a heinous nature for which the best interests of society required imposition of a sentence rather than disposition under *N. J. S. A.* 2A:4–37.

(1972) where we construed the same provision of *N. J. S. A.* 2A:168–2, "shall pay a fine or the costs of prosecution or both."

In *Mulvaney* the trial court, utilizing *N. J. S. A.* 2A:168–2, had ordered the defendant to pay the costs of prosecution as a condition of probation. However, instead of using the formula for calculating costs of prosecution set forth in existing statutes, the court made its own determination as to what such costs were ($16,750), and required defendant to pay these costs as a condition of probation.

We reversed, holding that the court had no power to order the payment of costs not provided for by statute. Referring to the language of *N. J. S. A.* 2A:168–2, "shall pay a fine or the costs of the prosecution or both," we said, 61 *N. J.*, at pp. 204–205:

> "We cannot find in that language a grant of authority to originate a liability for costs which is not authorized by another statute. It will be noted that the payment of a 'fine' may also be made a condition of probation by the quoted provision. No one suggests the Legislature thereby intended to permit the imposition of a fine in excess of the amount authorized by another statute. We see no reason to take a different view of the term 'costs of prosecution.'
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*　　\*
>
> We find no evidence that in speaking of the 'costs of prosecution' or of a 'fine' our Legislature meant anything other than the 'costs of prosecution' and the 'fine' which may be imposed upon conviction, without regard to the fact of probation. \* \* \*"

We recognize that an argument can be made that as a matter of sound social policy, imposition of a fine upon a juvenile, in appropriate circumstances, can aid in the rehabilitation of the juvenile by creating an awareness of responsibility to society for one's actions. However, the issue is one of statutory interpretation. We conclude that the applicable statutes did not confer the power to fine the juvenile.[4]

---

[4] The same result would appear to be called for under the new statute concerning juveniles, *L.* 1973, *c.* 306.

So much of the disposition herein as imposed a fine is hereby vacated.

*For modification* — Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.